## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVEO PHARMACEUTICALS, INC. and KYOWA KIRIN CO., LTD., <br><br> *Plaintiffs*, <br><br> v. <br><br> GLENMARK PHARMACEUTICALS LIMITED and GLENMARK PHARMACEUTICALS Inc., USA, <br><br> *Defendants*. | Civil Action No. _____ |

### COMPLAINT

Plaintiffs AVEO Pharmaceuticals, Inc. ("AVEO") and Kyowa Kirin Co., Ltd. ("KKC") (collectively, "Plaintiffs"), for their complaint against Glenmark Pharmaceuticals Inc., USA ("Glenmark USA") and Glenmark Pharmaceuticals Limited ("Glenmark Pharmaceuticals") (collectively, "Glenmark" or "Defendants"), hereby allege as follows:

### NATURE OF ACTION

1.     This is an action for infringement of United States Patent No. 11,504,365 ("the '365 Patent") and 7,166,722 ("the '722 Patent") (collectively, "the Patents-in-Suit") in relation to Glenmark's Abbreviated New Drug Application ("ANDA") No. 220307 (the "Glenmark ANDA"), which seeks approval from the U.S. Food & Drug Administration ("FDA") to make a generic version of AVEO's FOTIVDA® (tivozanib) product.

2.     Plaintiffs also seek a declaratory judgment under the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that

1

Glenmark's commercial manufacture, use, offer for sale, sale, and/or importation into the United

States of its ANDA No. 220307 would directly and indirectly infringe the Patents-in-Suit.

## PARTIES

3.      Plaintiff AVEO is a corporation organized and existing under the laws of the State

of Delaware, having a principal place of business at One Marina Park Drive, 12th Floor, Boston,

Massachusetts 02210.  AVEO develops, manufactures, and markets pharmaceutical products in

the United States.  AVEO is the owner of the '365 Patent and exclusive licensee of the '722

Patent.

4.      Plaintiff KKC is a corporation organized and existing under the laws of Japan,

having a principal place of business at 1-9-2, Otemachi, Chiyoda-Ku, Tokyo Japan 100-0004.

KKC develops, manufactures, and markets pharmaceutical products.  KKC is the owner of the

'722 Patent.

5.      On information and belief, Defendant Glenmark USA is a corporation organized

under the laws of the State of Delaware, having a principal place of business at 750 Corporate

Drive, Mahwah, New Jersey 07430.  On information and belief, Glenmark USA has a registered

agent for service of process, Corporation Service Company, located at 251 Little Falls Drive,

Wilmington, Delaware 19808.  On information and belief, Glenmark USA is in the business of,

among other things, manufacturing and selling generic versions of branded pharmaceutical

products for the United States market, including in this judicial district.  On information and

belief, Glenmark USA is the United States Regulatory Agent for Glenmark Pharmaceuticals.   On

information and belief, Glenmark USA is a wholly owned subsidiary of Glenmark

Pharmaceuticals.

6.      On information and belief, Defendant Glenmark Pharmaceuticals is a corporation organized under the laws of India, having corporate headquarters at Glenmark House, HDO-Corporate Building, Wing-A, B D Sawant Marg, Chakala, Off Western Express Highway, Mumbai 400099, Maharashtra, India.  On information and belief, Glenmark Pharmaceuticals is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products for the United States market, including in this judicial district.

7.      On information and belief, Defendants hold themselves out as affiliated entities within the same corporate family for purposes of manufacturing, marketing, selling, and distributing generic drug products through the United States, including in this judicial district.

8.      On information and belief, Defendants acted in concert to prepare and submit ANDA No. 220307 to the FDA.

9.      On information and belief, upon FDA approval, Defendants will work in concert with one another to make, use, offer to sell, and/or sell the drug products that are the subject of ANDA No. 220307 throughout the United States, and/or import such drug products into the United States, including in this judicial district.

10.     On information and belief, Defendants will each derive significant financial benefit resulting from the FDA's approval of ANDA No. 220307 and subsequent marketing and use of Glenmark's ANDA product throughout the United States, including in this judicial district.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

12.     This Court has personal jurisdiction over Glenmark USA because, on information and belief, Glenmark USA is a Delaware corporation.  On information and belief, Glenmark

USA maintains pervasive, continuous, and systematic contacts with the State of Delaware through the marketing, distribution, and sale of generic versions of branded pharmaceutical products in the State of Delaware and by deriving substantial revenue from the importation and sale of its products in the State of Delaware.

13.    This Court has personal jurisdiction over Glenmark Pharmaceuticals because, on information and belief, it maintains pervasive, continuous, and systematic contacts with the State of Delaware through the marketing, distribution, and sale of generic versions of branded pharmaceutical products in the State of Delaware, directly and through its affiliates, and by deriving substantial revenue from the importation and sale of its products in the State of Delaware.

14.    Alternatively, this Court may also exercise jurisdiction over Glenmark Pharmaceuticals pursuant to Fed. R. Civ. P. 4(k)(2) to the extent that Glenmark Pharmaceuticals, as a foreign defendant, is not subject to personal jurisdiction in any state's court of general jurisdiction, based on Glenmark Pharmaceuticals's contacts with the United States as a whole, including without limitation through the manufacture, importation, distribution, and sales of its pharmaceutical products throughout the United States, including in this judicial district.

15.    Venue is proper in this district as to Glenmark USA, pursuant to 28 U.S.C. §§ 1391 and 1400(b), because Glenmark USA is incorporated in the State of Delaware and thus resides in this judicial district.

16.    Venue is proper as to Glenmark Pharmaceuticals, pursuant to 28 U.S.C. § 1391(c)(3), because Glenmark Pharmaceuticals is a foreign corporation not residing in any judicial district and may be sued in any judicial district that has personal jurisdiction, including this judicial district.

4

## THE DRUG APPROVAL PROCESS

17.    A company seeking to market a new pharmaceutical drug in the United States must first obtain approval from the FDA, typically through the filing of a New Drug Application ("NDA").  *See* 21 U.S.C. § 355(a).  The sponsor of the NDA is required to submit to FDA information on all patents claiming the drug that is the subject of the NDA, or a method of using that drug, and FDA then lists the patent information in its publication, the *Approved Drug Products with Therapeutic Equivalence Evaluations*, which is referred to as the "Orange Book." *See* 21 U.S.C. §§ 355(b)(1) and (c)(2).

18.    Alternatively, a company seeking to market a generic version of a previously approved drug is not required to submit a full NDA.  Instead, it may file an Abbreviated New Drug Application ("ANDA").  *See* 21 U.S.C. § 355(j).  The generic drug approval process is considered "abbreviated" because the generic manufacturer may piggyback on the innovator company's data and FDA's prior finding of safety and efficacy by demonstrating, among other things, that the generic product is bioequivalent to the previously approved drug (the "reference listed drug" or "branded drug").

19.    In conjunction with this "abbreviated" application process, Congress has put in place a process for resolving patent disputes relating to generic drugs, pursuant to which an ANDA filer must provide certifications addressing each of the patents listed in the Orange Book for the branded drug.  *See* 21 U.S.C. § 355(j)(2)(A)(vii); 21 C.F.R. § 314.94(a)(12).  An ANDA filer may certify, for instance, that it believes a patent is invalid or will not be infringed by the manufacture, use, or sale of the generic drug for which the ANDA is submitted.  *See* 21 U.S.C. § 355(j)(2)(A)(vii)(IV); *see also* 21 C.F.R. § 314.94(a)(12)(i)(A)(4).  This is known as a "Paragraph IV Certification."

20.     The filer of an ANDA with a Paragraph IV Certification must also provide notice to both the owner of the listed patents and the holder of the NDA for the referenced listed drug. This "Paragraph IV Notice" must include a detailed statement of the factual and legal bases for the applicant's belief that the challenged patent is invalid or not infringed by the proposed generic product.  *See* 21 U.S.C. § 355(j)(2)(B); 21 C.F.R. § 314.95.

21.     If the patentee or NDA holder files a patent infringement action within 45 days of receiving a Paragraph IV Notice from an ANDA filer, final approval of the ANDA is subject to a litigation stay.  *See* 21 U.S.C. § 355(j)(5)(B)(iii); 21 C.F.R. § 314.107(b)(3).  When the NDA holder is awarded New Chemical Entity ("NCE") exclusivity, the litigation stay runs to the later of 30 months from receipt of the notice letter or seven-and-a-half years from the approval date of the NDA.  21 U.S.C. §§ 355(c)(3)(E)(ii), (j)(5)(F)(ii).  The stay provides an innovator company with the opportunity to resolve any patent dispute before the generic product enters the market. *See* 21 U.S.C. 355(j)(5)(B)(iii).

## FACTUAL BACKGROUND

### The Patents-in-Suit

22.     On November 22, 2022, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '365 Patent, entitled "Use of Tivozanib to Treat Subjects with Refractory Cancer," to AVEO as the assignee.  A true and correct copy of the '365 Patent is attached as Exhibit A.

23.     The claims of the '365 Patent are generally directed to methods of treating patients with refractory advanced renal cell carcinoma ("RCC") having previously received at least two anti-cancer therapies, at least one of which included a tyrosine kinase inhibitor ("TKI").

24.     On January 23, 2007, the USPTO duly and legal issued the '722 Patent, entitled "N-{2-chloro-4-[(6,7-dimethoxy-4-quinolyl)oxy]phenyl}-n′-(5-methyl-3-isoxazolyl)urea salt in crystalline form," to Kirin Beer Kabushiki Kaisha.  The '722 Patent was subsequently assigned to KKC.  A true and correct copy of the '722 Patent is attached as Exhibit B.

25.     The claims of the '722 Patent are generally directed to crystalline forms of tivozanib hydrochloride, including crystalline forms having certain characteristic peaks as determined by X-ray powder diffractometry ("XRPD").

**FOTIVDA®**

26.     AVEO is the holder of NDA 212904, including all supplements thereto, for FOTIVDA.

27.     On March 31, 2020, AVEO submitted NDA No. 212904, under Section 505(b)(1) of the Federal Food, Drug, and Cosmetic Act ("FDCA"), seeking FDA approval for an oral tivozanib hydrochloride product for the treatment of patients with relapsed or refractory RCC.  On March 10, 2021, the FDA approved NDA No. 212904.  NDA No. 212904 was also awarded NCE exclusivity, which expires March 10, 2026.

28.     Plaintiffs timely submitted information regarding the '365 Patent for Listing in FDA's Orange Book with respect to FOTIVDA, for strengths EQ 0.89MG BASE (Product 001), and EQ 1.34MG Base (Product 002), pursuant to 21 U.S.C. §§ 355(b)(1) and (c)(2).  The FDA thereafter listed the '365 Patent in the Orange Book with respect to those products, pursuant to 21 C.F.R. § 314.53(e).

29.     Plaintiffs timely submitted information regarding the '722 Patent in the Orange Book with respect to FOTIVDA, for strengths EQ 0.89MG BASE (Product 001), and EQ 1.34MG Base (Product 002), pursuant to 21 U.S.C. §§ 355(b)(1) and (c)(2).  The FDA thereafter

listed the '722 Patent in the Orange Book with respect to those products, pursuant to 21 C.F.R. § 314.53(e).

30.     Plaintiffs timely submitted information regarding U.S. Patent No. 6,821,987 (the "'987 patent") in the Orange Book with respect to FOTIVDA, for strengths EQ 0.89MG BASE (Product 001), and EQ 1.34MG Base (Product 002), pursuant to 21 U.S.C. §§ 355(b)(1) and (c)(2).  The FDA thereafter listed the '987 Patent in the Orange Book with respect to those products, pursuant to 21 C.F.R. § 314.53(e).

31.     The FDA-approved label for FOTIVDA, among other things, provides information and instructions for the safe and effective use of FOTIVDA by healthcare providers and patients.  A true and correct copy of the FOTIVDA label is attached as Exhibit C.

32.     The FOTIVDA label states that "FOTIVDA is indicated for the treatment of adult patients with relapsed or refractory advanced renal cell carcinoma (RCC) following two or more prior systemic therapies."  Ex. C § 1, Indications and Usage.

33.     According to the FOTIVDA label, the active ingredient in FOTIVDA is tivozanib hydrochloride, which has the chemical name 1-{2-chloro-4-[(6,7-dimethoxyquinolin-4-yl)oxy]phenyl}-3-(5-methylisoxazol-3-yl)urea hydrochloride hydrate.  *Id.* § 11, Description.  It is alternatively referred to as N-{2-chloro-4-[(6,7-dimethoxy-4-quinolyl)oxy]phenyl}-N′-(5-methyl-3-isoxazolyl)urea monohydrochloric acid salt monohydrate.

34.     Tivozanib hydrochloride is a "white to light brown crystalline powder."  Ex. C § 11, Description.

35.     Tivozanib hydrochloride is a tyrosine kinase inhibitor ("TKI") targeting specific proteins that tumors rely on to grow new blood vessels, namely vascular endothelial growth factor receptor ("VEGFR")-1, VEGFR-2, and VEGFR-3.  *See* Ex. C § 12.1, Mechanism of

Action.  This growth of new blood vessels, known as angiogenesis, supplies tumors with the oxygen and nutrients they need to grow and spread.  *Id.*  By inhibiting angiogenesis, tivozanib acts to slow the growth of a tumor or cause it to shrink.  *Id.*  Tivozanib exhibits high selectivity for these proteins, which means it interferes less with other cellular functions and can reduce side effects compared to broader systemic treatments.

36.    Hepatic impairment refers to the reduction in liver function due to liver disease or damage.  It affects the liver's ability to metabolize drugs and can lead to increased bioavailability of orally administered drugs.  Among the patients with RCC who are treated with tivozanib hydrochloride are those who have hepatic impairment or develop hepatic impairment during the treatment cycle.

37.    The "recommended dosage of FOTIVDA is 1.34 mg taken orally once daily for 21 days on treatment followed by 7 days off treatment for a 28-day cycle."  Ex. C § 2.1, Recommended Dosing.  The label states that the "1.34 mg capsule contains 1.5 mg of tivozanib hydrochloride (equivalent to 1.34 mg tivozanib)."  *Id*. § 11, Description.

38.    The FOTIVDA label provides further instructions for "use in specific populations," including patients with moderate hepatic impairment.  Ex. C, Highlights of Prescribing Information.  Specifically, the FOTIVDA label instructs monitoring patients for hepatic impairment and making certain dose modifications for patients exhibiting moderate hepatic impairment.  *Id.* § 2.3 Dosage Modifications for Moderate Hepatic Impairment; § 8.7 Hepatic Impairment.  For such patients, the "recommended dosage of FOTIVDA [is a] 0.89 mg capsule taken orally once daily for 21 days on treatment followed by 7 days off treatment for a 28-day cycle."  *Id.* § 2.3.  The Dosage and Administration section from the Highlights of Prescribing Information portion of the label also instructs healthcare providers and patients to

9

"reduce the dose to 0.89 mg" for patients with moderate hepatic impairment.  *Id*., Highlights of

Prescribing Information.  The label states that the "0.89 mg capsule contains 1.0 mg of tivozanib

hydrochloride (equivalent to 0.89 mg tivozanib)."  *Id*. § 11, Description.

39.    The FOTIVDA label also provides that "[t]he safety of FOTIVDA was evaluated

in TIVO-3, a randomized, open-label trial in 350 patients with relapsed or refractory advanced

RCC who received 2 or 3 prior systemic treatments *[see CLINICAL STUDIES (14)]*," and directs

the reader to the clinical studies section of the label. Ex. C. § 6.1, Clinical Trial Experience.  The

clinical studies section states that the "efficacy of FOTIVDA was evaluated in TIVO-3

(NCT02627963), a randomized (1:1), open label, multicenter trial of FOTIVDA versus sorafenib

in patients with relapsed or refractory advanced RCC who received 2 or 3 prior systemic

treatments including at least one VEGFR kinase inhibitor other than sorafenib or tivozanib."  *Id*.

§ 14 Clinical Studies.  Further, the FOTIVDA label, sets forth a summary of the patient

demographics for the clinical trial, stating that "[p]rior therapy included two KIs (45%), a KI

plus an immune checkpoint inhibitor (26%), and a KI plus another systemic agent (29%)."  *Id*.

Thus, all patients in the TIVO-3 trial described in the FOTIVDA label received a TKI prior to

treatment with tivozanib as a monotherapy.  *See id*. § 6.1, Clinical Trial Experience and § 14,

Clinical Studies.

40.    The FOTIVDA label reports the efficacy results of the TIVO-3 clinical trial,

providing, among other things, that the median duration of progression free survival in patients

receiving FOTIVDA is 5.6 months.   Ex. C § 14, Table 4, Efficacy Results in TIVO-3 (ITT).

### Glenmark's Infringing Tivozanib Hydrochloride Products

41.    On information and belief, on or before May 2, 2025, Glenmark USA and

Glenmark Pharmaceuticals, submitted ANDA No. 220307 pursuant to 21 U.S.C. § 355(j),

seeking FDA approval to engage in the commercial manufacture, importation, use, marketing, and sale of proposed generic tivozanib hydrochloride (eq. 1.34 mg and 0.89 mg base), referencing AVEO's FOTIVDA product as the reference listed drug (the "Proposed ANDA Product").

42.    Glenmark sent Plaintiffs a notice letter, dated May 2, 2025, stating that Glenmark had submitted the Glenmark ANDA seeking approval to manufacture, import, use, market, and/or sell the Proposed ANDA Product prior to the expiration of the '365 Patent and '722 Patent (the "Paragraph IV Notice Letter").

43.    Plaintiffs received the Notice Letter on May 5, 2025.

44.    The Paragraph IV Notice Letter asserts that the '365 Patent and the '722 Patent are invalid and not infringed by the Proposed ANDA Product but makes no such assertions with respect to the '987 Patent.

45.    The Paragraph IV Notice Letter included an offer of confidential access to the Glenmark ANDA pursuant to 21 U.S.C. § 355(j)(5)(C).  The offer only committed to provide unspecified information from Glenmark's ANDA and was subject to unreasonably restrictive confidentiality provisions.

46.    Glenmark's submission of the Glenmark ANDA to the FDA, including any amendments or supplements thereto, and any commercial manufacture or sale by Glenmark of the Proposed ANDA Product, constitutes infringement of the '365 Patent and the '722 Patent, as detailed below.

47.    This action is being commenced before the expiration of forty-five days from the date Plaintiffs received Glenmark's Paragraph IV Notice Letter.

## COUNT I
## INFRINGEMENT OF THE '365 PATENT

48.    Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

49.    The submission of the Glenmark ANDA to the FDA, including the Paragraph IV Certification submitted therewith, which seeks approval to engage in the commercial manufacture, use, marketing, offer for sale, sale, and/or importation of the Proposed ANDA Product prior to the expiration of the '365 Patent, constitutes infringement by Glenmark of the '365 Patent under 35 U.S.C. § 271(e)(2)(A).

50.    The commercial manufacture, use, marketing, offer for sale, sale, and/or importation into the United States of the Proposed ANDA Product by Glenmark before the expiration of the '365 Patent would instruct, direct, recommend, encourage, and/or promote direct infringement, contributory infringement, and/or active inducement of infringement of the '365 Patent under 35 U.S.C. §§ 271(a)-(c).

51.    On information and belief, and subject to Plaintiffs' ongoing investigation and discovery efforts, if Glenmark's Proposed ANDA Product is approved, Glenmark will make, offer for sale, sell, or import Glenmark's ANDA Product in a manner that, when used in accordance with its proposed labeling would infringe at least, by way of example, independent claims 1 and 7 of the '365 Patent, which recite as follows:

1. A method of treating a human subject with refractory advanced renal cell carcinoma (RCC) having previously received at least two anti-cancer therapies, at least one of which included a tyrosine kinase inhibitor (TKI), the method comprising:

administering to the subject treatment cycles consisting essentially of:

orally administering a pharmaceutical composition comprising an active agent consisting essentially of 1.5 mg tivozanib hydrochloride daily for 21 days followed by 7 days without administration of tivozanib hydrochloride until the subject experiences moderate hepatic impairment, upon which the

amount of tivozanib hydrochloride in each treatment cycle is reduced from 1.5 mg to 1.0 mg,

thereby to achieve a progression free survival in the subject of at least 5 months.

7. A method of treating a human subject with refractory advanced renal cell carcinoma (RCC) having previously received at least two anti-cancer therapies, at least one of which included a tyrosine kinase inhibitor (TKI), and experiencing moderate hepatic impairment, the method comprising:

administering to the subject one or more treatment cycles consisting essentially of:

orally administering a pharmaceutical composition comprising an active agent consisting essentially of 1.0 mg tivozanib hydrochloride daily for 21 days followed by 7 days without administration of tivozanib hydrochloride

thereby to treat RCC.

52.    On information and belief, Glenmark's Proposed ANDA Product will substantively copy the FOTIVDA label.  *See* 21 C.F.R. § 314.94(a)(8)(iv).  Accordingly, on information and belief and subject to Plaintiffs' ongoing investigation and discovery efforts, by virtue of Glenmark's submission of the proposed product label and other conduct, Glenmark proposes to instruct, direct, recommend, encourage, and/or promote direct infringement of at least claims 1 and 7 of the '365 Patent by patients, physicians, prescribers and/or other healthcare providers.

53.    Glenmark's Proposed ANDA Product is indicated for the treatment of adult patients with relapsed or refractory advanced RCC following two or more prior systemic therapies.

54.    On information and belief, the label for Glenmark's Proposed ANDA Product, including its indication for patients with refractory advanced RCC would actively direct, instruct,

recommend, encourage, and/or promote that patients, physicians, prescribers, and/or healthcare providers administer tivozanib hydrochloride to patients with refractory advanced RCC.

55.     On information and belief, many patients with relapsed or refractory advanced RCC who have had two or more prior systemic therapies would have received at least one TKI prior to treatment with tivozanib hydrochloride.

56.     On information and belief, the label for Glenmark's Proposed ANDA Product, including its description of the TIVO-3 study conducted on patients who all received a TKI prior to receiving tivozanib hydrochloride, would actively direct, instruct, recommend, encourage, and/or promote that patients, physicians, prescribers, and/or healthcare providers administer tivozanib hydrochloride to patients with refractory advanced RCC who have had two or more prior systemic therapies including at least one TKI.

57.     The recommended dosage of Glenmark's Proposed ANDA Product is 1.34 mg once daily 21 days on treatment followed by 7 days off treatment.  On information and belief, the 1.34 mg dosage form of Glenmark's Proposed ANDA Product contains 1.5 mg of tivozanib hydrochloride.

58.     On information and belief, among the patients who are administered Glenmark's Proposed ANDA Product according to the instructions in its label are those who will have moderate hepatic impairment at the onset of treatment or develop moderate hepatic impairment during treatment.

59.     Glenmark's Proposed ANDA Product label includes instructions to reduce the dose of tivozanib for patients with moderate hepatic impairment.  On information and belief, based on these label instructions, physicians or healthcare providers will assess the patients' liver function for hepatic impairment before and during treatment.

60.     On information and belief, physicians or healthcare providers will consult and follow the instructions of Glenmark's Proposed ANDA Product label and adjust the dose of tivozanib hydrochloride from 1.5 mg to 1.0 mg for patients with moderate hepatic impairment. On information and belief, the 0.89 mg dosage form of Glenmark's Proposed ANDA Product contains 1.0 mg of tivozanib hydrochloride.  Accordingly, Glenmark's Proposed ANDA Product label would actively direct, instruct, recommend, encourage, and/or promote, that patients, physicians, prescribers, and/or healthcare providers reduce the dose of tivozanib hydrochloride from 1.5 mg to 1.0 mg for patients with moderate hepatic impairment.

61.     Glenmark's Proposed ANDA Product label provides instructions and safety information regarding the use and administration of tivozanib as a monotherapy.  Accordingly, Glenmark's Proposed ANDA Product label would actively direct, instruct, recommend, encourage, and/or promote that patients, physicians, prescribers, and/or healthcare providers administer or take tivozanib hydrochloride as a monotherapy.

62.     Glenmark's Proposed ANDA Product label reports the efficacy results of clinical trials involving the treatment of RCC patients with tivozanib, where the median duration of progression free survival in patients receiving tivozanib is 5.6 months.  Accordingly, Glenmark's Proposed ANDA Product label would actively direct, instruct, recommend, encourage, and/or promote that patients, physicians, prescribers, and/or healthcare providers administer or take tivozanib hydrochloride to achieve a progression free survival in the subject of at least 5 months.

63.     On information and belief, and subject to Plaintiffs' ongoing investigation and discovery efforts, the manufacture, use (including as directed in Glenmark's proposed labeling for Glenmark's Proposed ANDA Product), offer for sale, sale, marketing, distribution, and/or

importation of Glenmark's Proposed ANDA Product will satisfy each of the recited elements of the methods recited in at least claims 1 and 7, either literally or under the doctrine of equivalents.

64.    On information and belief, if the FDA were to approve the Glenmark ANDA, Glenmark's commercial manufacture, use, marketing, offer for sale, sale, and/or importation into the United States of the Proposed ANDA Product, including administration of Glenmark's Proposed ANDA Product according to the foregoing label instructions, would necessarily or inevitably cause patients, physicians, prescribers, and/or other healthcare providers to directly infringe at least claims 1 and 7. Glenmark would actively induce and contribute to such direct infringement.

65.    Glenmark has knowledge of the claims of the '365 Patent. Despite this knowledge, Glenmark has continued to assert its intent to engage in the manufacture, use, offer for sale, sale, marketing (including marketing Glenmark's Proposed ANDA Product as a generic substitute for FOTIVDA to be used and administered in the same manner as FOTIVDA), distribution, and/or importation of Glenmark's Proposed ANDA Product with the proposed labeling to be included for the Proposed ANDA Product, immediately and imminently upon approval of ANDA No. 220307. On information and belief, and subject to Plaintiffs' ongoing investigation and discovery efforts, by engaging in the forgoing activities, Glenmark specifically intends to infringe the '365 Patent.

66.    On information and belief, Glenmark's specific intent to actively induce and/or contribute to infringement of at least claims 1 and 7 of the '365 Patent includes Glenmark's decision to proceed with its plan to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Glenmark's Proposed ANDA Product, despite being aware that the proposed labeling to be included for the Proposed ANDA Product instructs,

directs, recommends, encourages, and/or promotes direct infringement of at least claims 1 and 7 of the '365 Patent.

67.    On information and belief, and with full knowledge of the '365 Patent, Glenmark intends to and will actively induce infringement of the '365 Patent when Glenmark's Proposed ANDA is approved and will do so immediately and imminently upon approval.

68.    FOTIVDA and any corresponding generic tivozanib hydrochloride product is not a staple article of commerce and has no substantial approved uses that do not infringe at least claims 1 and 7 of the '365 Patent.  On information and belief, Glenmark's Proposed ANDA Product is not a staple article of commerce and has no substantial uses that do not infringe at least claims 1 and 7 of the '365 Patent.  Upon information and belief, and subject to Plaintiffs' ongoing investigation and discovery efforts, Glenmark, with full knowledge of the '365 Patent, knows that its Proposed ANDA Product is especially adapted for use in a manner that infringes the '365 Patent, is not a staple article of commerce, and has no substantial uses that do not infringe at least claims 1 and 7 of the '365 Patent.

69.    Any launch by Glenmark of the Proposed ANDA Product before expiration of the '365 Patent would cause Plaintiffs to suffer immediate and irreparable harm.

70.    Unless Glenmark is enjoined from infringing the '365 Patent, actively inducing infringement of the '365 Patent, and contributing to the infringement of others of the '365 Patent, Plaintiffs will suffer irreparable injury.  Plaintiffs have no adequate remedy at law.

71.    Glenmark's infringement of the '365 Patent is willful.

**COUNT II**
**DECLARATORY JUDGMENT OF**
**INFRINGEMENT OF THE '365 PATENT**

72.    Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

73.     These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

74.     For the reasons explained in Count I above, if the FDA were to approve the Glenmark ANDA, Glenmark's commercial manufacture, use, marketing, offer for sale, sale, and/or importation into the United States of the Proposed ANDA Product would instruct, direct, recommend, encourage, and/or promote direct infringement, contributory infringement, and/or active inducement of infringement of at least, by way of example, claims 1 and 7 of the '365 Patent under 35 U.S.C. §§ 271(a)-(c).

75.     With full knowledge of the '365 Patent, Glenmark submitted ANDA No. 220307 to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, and/or sale of Glenmark's ANDA Product with its proposed labeling prior to expiration of the '365 Patent.

76.     Any launch by Glenmark of the Proposed ANDA Product before expiration of the '365 Patent would cause Plaintiffs to suffer immediate and irreparable harm.

77.     Glenmark's infringement of the '365 Patent would be willful.

78.     A definite and concrete controversy exists between Plaintiffs and Glenmark as to whether Glenmark's commercial manufacture, use, marketing, offer for sale, sale, and/or importation into the United States of the Proposed ANDA Product prior to the expiration of the '365 Patent would infringe the '365 Patent.   Accordingly, Plaintiffs are entitled to a declaratory judgment that it would.

**COUNT III**
**INFRINGEMENT OF THE '722 PATENT**

79.     Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

80.     The submission of the Glenmark ANDA to the FDA, including the Paragraph IV Certification submitted therewith, which seeks approval to engage in the commercial manufacture, use, marketing, offer for sale, sale, and/or importation of the Proposed ANDA Product prior to the expiration of the '722 Patent, constitutes infringement by Glenmark of the '722 Patent under 35 U.S.C. § 271(e)(2)(A).

81.     The commercial manufacture, use, marketing, offer for sale, sale, and/or importation into the United States of the Proposed ANDA Product by Glenmark before the expiration of the '722 Patent would constitute infringement by Glenmark of the '722 Patent under 35 U.S.C. §§ 271(a)-(c), and (g).

82.     On information and belief, and subject to Plaintiffs' ongoing investigation and discovery efforts, if Glenmark's Proposed ANDA Product is approved, Glenmark will make, offer for sale, sell, or import Glenmark's ANDA Product, comprising crystalline tivozanib hydrochloride, and would infringe at least, by way of example, independent claims 1 and 13 of the '722 Patent, which recite as follows:

1.     Crystalline    N-{2-chloro-4-[(6,7-dimethoxy-4-quinolyl)oxy]phenyl}-N′-(5-methyl-3-isoxazolyl)urea monohydrochloric acid salt monohydrate.

13. A process for producing a crystal N-{2-chloro-4-[(6,7-dimethoxy-4-quinolyl)oxy]phenyl}-N′-(5-methyl-3-isoxazolyl)urea, monohydrochloric acid salt monohydrate, said process comprising the steps of:

> adding hydrochloric acid to a solution of N-{2-chloro-4-[(6,7-dimethoxy-4-quinolyl)oxy]phenyl}-N′-(5-methyl-3-isoxazolyl)urea in an aprotic polar solvent selected from N,N-dimethylformamide and N,N-dimethylacetamide;

19

adding ethanol and water to the above solution to precipitating crystals from the solution.

83.    Glenmark did not set forth any theory of noninfringement with respect to any claim of the '722 patent in its Paragraph IV Notice Letter.

84.    On information and belief, Glenmark's Proposed ANDA Product, upon manufacture, formulation, and/or storage during its shelf life, will contain the same active ingredient as FOTIVDA, crystalline tivozanib hydrochloride, also referred to as N-{2-chloro-4-[(6,7-dimethoxy-4-quinolyl)oxy]phenyl}-N'-(5-methyl-3-isoxazolyl)urea monohydrochloric acid salt monohydrate.  *See* 21 C.F.R. § 314.94(a)(1).  Accordingly, on information and belief and subject to Plaintiffs' ongoing investigation and discovery efforts, the manufacture, use (including as directed in Glenmark's proposed labeling for Glenmark's Proposed ANDA Product), offer for sale, sale, marketing, distribution, and/or importation of Glenmark's Proposed ANDA Product will satisfy each of the recited elements of the compound recited in at least claim 1 of the '722 Patent, and thus directly infringe claim 1 of the '722 patent, either literally or under the doctrine of equivalents.

85.    On information and belief, and subject to Plaintiffs' ongoing investigation and discovery efforts, the crystalline tivozanib hydrochloride in Glenmark's Proposed ANDA Product will be manufactured by a process comprising the steps of (1) adding hydrochloric acid to a solution of N-{2-chloro-4-[(6,7-dimethoxy-4-quinolyl)oxy]phenyl}-N'-(5-methyl-3-isoxazolyl)urea in an aprotic polar solvent selected from N,N-dimethylformamide and N,N-dimethylacetamide; and (2) adding ethanol and water to the above solution to precipitating crystals from the solution.  Accordingly, on information and belief and subject to Plaintiffs' ongoing investigation and discovery efforts, the manufacturing and/or importation of Glenmark's Proposed ANDA Products will satisfy each of the recited elements of the method described in

20

claim 13 of the '722 Patent, and thus directly infringe claim 13 of the '722 patent, either literally or under the doctrine of equivalents.

86.     On information and belief, if the FDA were to approve the Glenmark ANDA, Glenmark's commercial manufacture, use, marketing, offer for sale, sale, and/or importation into the United States of the Proposed ANDA Product, including administration of Glenmark's Proposed ANDA Product according to the label instructions, would cause patients, physicians, prescribers, and/or other healthcare providers to directly infringe at least claims 1 and 13 of the '722 Patent.  Glenmark would actively induce and contribute to such direct infringement.

87.     Glenmark has knowledge of the claims of the '722 Patent.  Despite this knowledge, Glenmark has continued to assert its intent to engage in the manufacture, use, offer for sale, sale, marketing (including marketing Glenmark's Proposed ANDA Product as a generic substitute for FOTIVDA to be used and administered in the same manner as FOTIVDA), distribution, and/or importation of Glenmark's Proposed ANDA Product with the proposed labeling to be included for the Proposed ANDA Product, immediately and imminently upon approval of ANDA No. 220307.  On information and belief, and subject to Plaintiffs' ongoing investigation and discovery efforts, by engaging in the forgoing activities, Glenmark specifically intends to infringe the '722 Patent.

88.     On information and belief, Glenmark's specific intent to actively induce and/or contribute to infringement of at least claims 1 and 13 of the '722 Patent includes Glenmark's decision to proceed with its plan to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Glenmark's Proposed ANDA Product, despite being aware that the proposed labeling to be included for the Proposed ANDA Product instructs, directs, recommends, encourages, and/or promotes direct infringement of the '722 Patent.

89.     On information and belief, and with full knowledge of the '722 Patent, Glenmark intends to and will actively induce infringement of the '722 Patent when Glenmark's Proposed ANDA is approved and will do so immediately and imminently upon approval.

90.     FOTIVDA and any corresponding generic tivozanib hydrochloride product is not a staple article of commerce and has no substantial approved uses that do not infringe at least claims 1 and 13 of the '722 Patent.  Upon information and belief, and subject to Plaintiffs' ongoing investigation and discovery efforts, Glenmark, with full knowledge of the '722 Patent, knows that its Proposed ANDA Product is especially adapted for use in a manner that infringes the '722 Patent, is not a staple article of commerce, and has no substantial uses that do not infringe at least claims 1 and 13 of the '722 Patent.

91.     Any launch by Glenmark of the Proposed ANDA Product before expiration of the '722 Patent would cause Plaintiffs to suffer immediate and irreparable harm.

92.     Unless Glenmark is enjoined from infringing the '722 Patent, actively inducing infringement of the '722 Patent, and contributing to the infringement of others of the '722 Patent, Plaintiffs will suffer irreparable injury.  Plaintiffs have no adequate remedy at law.

93.     Glenmark's infringement of the '722 Patent is willful.

**COUNT IV**
**DECLARATORY JUDGMENT OF**
**INFRINGEMENT OF THE '722 PATENT**

94.     Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

95.     These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

96.     For the reasons explained in Count III above, if the FDA were to approve the Glenmark ANDA, Glenmark's commercial manufacture, use, marketing, offer for sale, sale,

and/or importation into the United States of the Proposed ANDA Product would constitute, instruct, direct, recommend, encourage, and/or promote direct infringement, contributory infringement, and/or active inducement of infringement of at least, by way of example, claims 1 and 13 of the '722 Patent under 35 U.S.C. §§ 271(a)-(c), (g).

97.    With full knowledge of the '722 Patent, Glenmark submitted ANDA No. 220307 to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, and/or sale of Glenmark's ANDA Product prior to expiration of the '722 Patent.

98.    Any launch by Glenmark of the Proposed ANDA Product before expiration of the '722 Patent would cause Plaintiffs to suffer immediate and irreparable harm.

99.    Glenmark's infringement of the '722 Patent would be willful.

100.    A definite and concrete controversy exists between Plaintiffs and Glenmark as to whether Glenmark's commercial manufacture, use, marketing, offer for sale, sale, and/or importation into the United States of the Proposed ANDA Product prior to the expiration of the '722 Patent would infringe the '722 Patent.   Accordingly, Plaintiffs are entitled to a declaratory judgment that it would.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A.    A judgment that Glenmark has infringed the Patents-in-Suit, and a declaration that Glenmark's commercial manufacture, distribution, use, marketing, offer for sale, sale, and/or importation into the United States of the Proposed ANDA Product would infringe the Patents-in-Suit;

B.      An order, pursuant to 35 U.S.C. § 271(e)(4)(A), that the effective date of any approval of the Glenmark ANDA No. 220307 under § 505(j) of the Federal Food Drug, and Cosmetic Act, 21 U.S.C. § 355(j), shall not be earlier than the expiration of the Patents-in-Suit;

C.      A permanent injunction, pursuant to 35 U.S.C. § 271(e)(4)(B) and 35 U.S.C. § 283, restraining and enjoining Glenmark, their respective officers, agents, servants and employees, and those persons in active concert or participation with any of them, from infringing the Patents-in-Suit for the full term thereof;

D.      An order that damages or other monetary relief be awarded to Plaintiffs if Glenmark engages in the commercial manufacture, use, marketing, offer to sale, sale, and/or importation of the Proposed ANDA Product prior to the expiration of the Patents-in-Suit for the full term thereof, and that such damages or monetary relief be trebled and awarded to Plaintiffs with prejudgment interest;

E.      A declaration that this is an exceptional case and an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

F.      Costs and expenses incurred by Plaintiffs in this action; and

G.      Such other and further relief as the Court may deem just and proper.


Dated: June 13, 2025                          Respectfully submitted,

                                              FARNAN LLP

OF COUNSEL
                                              /s/ Michael J. Farnan
Martin J. Black (*pro hac vice forthcoming*)   Brian E. Farnan (Bar No. 4089)
Brian M. Goldberg (*pro hac vice forthcoming*) Michael J. Farnan (Bar No. 5165)
Sharon K. Gagliardi (*pro hac vice*           919 North Market St.
*forthcoming*)                                12th Floor Wilmington, DE 19801
DECHERT LLP                                   Tel: 302-777-0300
Cira Centre                                   Fax: 320-777-0301
2929 Arch Street

Philadelphia, PA 19104-2808
Tel: (215) 994-4000
martin.black@dechert.com
brian.goldberg@dechert.com

Pejmon Pashai (*pro hac vice forthcoming*)
DECHERT LLP
1900 K Street, NW
Washington, D.C. 20006-1110
Tel: (202) 261-3300
pejmon.pashai@dechert.com

bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs AVEO*
*Pharmaceuticals, Inc. and Kyowa Kirin Co.,*
*Ltd.*